MUDGE v. WEST END BREWING CO.

(Supreme Court, Appellate Division, Third Department. May 16, 1911.)

1. LANDLORD AND TENANT (§ 160*)—COVENANT TO SURRENDER—EFFECT.

A lessee's covenant to surrender the property in good condition at the expiration of the lease relates to the physical condition of repair, and did not include liability for future rent lost because of the lessor's inability to rent the premises for a saloon, for which alone they were adapted, because of the tenant's breach of the liquor tax law during the term.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 612–626; Dec. Dig. § 160.*]

2. LANDLORD AND TENANT (§ 134*)—COVENANTS—INDEMNITY.

Plaintiff leased certain premises, only adapted for saloon purposes, to defendant prior to the adoption of Liquor Tax Law (Consol. Laws 1909, c. 34) § 39, providing that no new liquor tax certificate shall be issued for the carrying on of liquor business on premises, the occupant of which, a prior certificate holder, has been convicted of violating the liquor law during one year from the date of conviction. The lease contained a covenant to indemnify plaintiff from any liability that might occur on account of the sale of intoxicating liquors on the premises, or because of any violation of any provision of the liquor tax law, etc. Held, that such covenants did not cover a loss of rents by plaintiff after the term, because of his inability to rent the premises for a saloon, owing to a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

conviction of the prior occupant under defendant's lease of a violation of the liquor tax law.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 482–486; Dec. Dig. § 134.*]

Smith, P. J., and Kellogg, J., dissenting.

Appeal from Trial Term, Schenectady County.

Action by William H. Mudge against the West End Brewing Company. Judgment for defendant (68 Misc. Rep. 362, 125 N. Y. Supp. 15), and plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, SEWELL, HOUGHTON, and BETTS, JJ.

W. W. Wemple, for appellant.
Henry V. Borst, for respondent.

HOUGHTON, J.   The defendant is owner of premises in the city of· Schenectady, which the court has found were adapted only for saloon purposes.   He leased them with the furniture and fixtures to the defendant for one year from May 1, 1906, with the privilege of two years more, which privilege the defendant exercised, and paid the full rent up to the time of the expiration of the lease on April 30, 1909.   The lease contained a provision that the defendant might sublet, and it did sublet to one Kuhl; the·defendant, however, paying the rent.   Shortly before the expiration of the lease, and in March, 1909, Kuhl was convicted of permitting gambling on the premises and his license certificate was canceled.   In May, 1908, a law was enacted. which went into effect immediately, providing, among other things, that no new certificate should be issued for the carrying on of the liquor business upon premises the occupant of which had been so convicted during the term of one year from the date of conviction of the former certificate holder.   The effect of this law upon the premises was that no liquor tax certificate could be issued to any occupant until April 1, 1910.   The premises being only suitable for a saloon, the plaintiff was unable to rent them as such, and brought this action against the defendant for the loss of his rent from the time of the expiration of the lease of defendant to said period when the premises were again free to be rented for saloon purposes.   The lease contained the usual covenant that the tenant would at the expiration of the term surrender the premises in good condition, necessary wear and tear by the elements excepted, and also that the tenant would replace or pay for any articles or property belonging to the landlord, if the same were destroyed or damaged except through reasonable use.

In addition, the lease contained a covenant that the defendant would indemnify and save the plaintiff harmless from any liability that might occur on account of renting the premises for the sale of intoxicating liquors, and for any liability that might arise by virtue of any civil damages because of the sale of intoxicating liquors to any person; and further provided as follows:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"And for protecting said first party against any liability that may occur on account of the provisions of the statute, section 39 of the liquor tax law or any violation that may occur on account of any requirement or provision of said liquor tax law, or otherwise, and in case of any liability on account of any illegal sales of intoxicating liquors, or any liability for damages suffered under and by virtue of such law, or any law rendering said first party liable for damages under the civil damage act or otherwise, then and in that case said second party hereby will save said first party harmless as landlord."

The trial resulted in a dismissal of plaintiff's complaint so far as damages for loss of rent were concerned, and the plaintiff appeals.

We are of opinion the learned trial court properly denied damages for loss of rent because the premises could not be rented for saloon purposes to which they were alone adapted.

[1] The covenant to surrender the property in good condition at the expiration of the lease manifestly can relate only to the physical condition of repair. The rule of damages applicable to such covenant precludes the idea that loss of rent is included in it. The rule without variation is that under such a covenant the damages are what it would cost to put the premises in the required state of repair. Appleton v. Marx, 191 N. Y. 81, 83 N. E. 563, 16 L. R. A. (N. S.) 210. It was contended in Lehmaier v. Jones, 100 App. Div. 495, 91 N. Y. Supp. 687, that the rule of damages under such a covenant ought to be the difference in fee value, but the contention was repudiated as manifestly unsound.

If such a covenant does not cover the difference in fee value, it certainly cannot cover the difference in rental value as damages for the nonrentability of the premises.

[2] The other covenants of the lease referring to the liquor tax law are manifestly covenants of indemnity against liability. The language of these various covenants is broad, and, if the law disqualifying the premises from carrying on the liquor business within one year after an occupant had been convicted of permitting gambling on the premises had been in existence at the time the lease was executed, a very plausible argument could be maintained that the defendant had agreed to allow no disqualification of the premises to occur which would prohibit an occupant of the premises from obtaining a liquor tax certificate. Almost everything which might happen to a landlord because he had rented his premises for the sale of intoxicating liquors is provided against except what actually occurred, and doubtless what did occur was not provided against because the law was not in existence or contemplated by the parties. A statute relating to the subject-matter of a contract is deemed to be read into the contract and the parties are deemed to have contracted with reference to it, but they cannot be deemed to have done so when the statute does not exist. The lease was made in 1906. The law disqualifying the premises for one year after an occupant had been convicted of permitting gambling upon the premises was not enacted until 1908. The parties, therefore, cannot be deemed to have contracted with reference to such a law, and hence the defendant was not responsible because the premises had become unrentable for saloon purposes.

We are of opinion that the judgment was proper, and should be affirmed.

Judgment affirmed, with costs. All concur, except SMITH, P. J., and KELLOGG, J., who dissent each in memorandum.

SMITH, P. J. (dissenting). In the indemnity clause of this lease the defendant undertakes to protect "the first party against [any liability that may occur on account of the provisions of the statute, section 39 of the liquor tax law or] any violation that may occur on account of any requirement or provision of said liquor tax law or otherwise. * * *" The brackets are mine. The use of the words "that may occur" in the clause bracketed and in the subsequent clause would seem to designate the two clauses as disjunctive, so that the indemnity may be construed to protect the plaintiff "against any violation that may occur on account of any requirement or provision of said liquor tax law or otherwise." This indemnity is as broad as language could well make it. The use of the words "or otherwise" would seem to indicate the intention of the parties to give full protection to the landlord against any harm that might in any way come to him from a violation of the liquor tax law. Assuming for the argument that ordinarily such a provision would apply simply to the law as it existed at the time the contract was made, nevertheless the nature of the business which was to be carried on, the careful supervision of that business by the state, and generally the broad provisions of the indemnity, indicate to my mind an intention to give full protection from injury from whatsoever source arising out of the violation of that law, whether in the incurring of penalties therein prescribed or thereafter inserted. By reason of the fault of this subtenant of the defendant, the plaintiff has, without fault on his part, lost the rent of his place for a year, and the courts should not by a strict construction of the contract deny to him the relief which it seems to me was fairly included within its terms.

JOHN M. KELLOGG, J. (dissenting). The premises were only rentable and suitable for saloon purposes, and it is apparent from that fact and the terms of the lease that they were leased for such purposes. Permitting gambling in the saloon was an unlawful act and in violation of the spirit of the lease. The plaintiff has lost the use of his premises for 11 months on account of such illegal use. It is true that, when the lease was made, a violation of its spirit by the tenant in permitting gambling upon the premises could not result in depriving them in the future of their valuable character as a saloon. The lease contemplated a saloon legally conducted under the liquor tax law. The parties well knew that the provisions of that law might be changed from time to time and new and different regulations placed upon the business, and other punishments or penalties visited upon the certificate holder or the premises for the criminal violation of such laws. The amendment of which the defendant complains has not made unlawful that which was lawful at the time the lease was executed. Liquor Tax Law, § 21 (formerly section 23) subd. 7, and section 30 (formerly section 31) subd. "E."

It has simply added an additional punishment or penalty for an illegal act not warranted by the terms of the lease, and after such amendment was made the defendant, through its tenant, violated the statute, and thereby disqualified and rendered the premises unfit for a saloon.

It is unnecessary to consider the various covenants in the lease, for, if the other covenants are not sufficient to cover such misuse of the premises, it may well be held that by the illegal acts of the tenant, and the result naturally resulting theref·.>m, the premises have not been returned in as good condition as°they were in when taken, ordinary wear and damages by the elements excepted. That covenant must be construed with reference to the known character of the property, the purpose of the lease and the only business for which the premises were available. These terms in a lease usually apply to a physical injury to the property itself from the fact that ordinarily, aside from physical misuse and injury by the elements, the property at the end of the term would be in substantially the same condition as when taken. That covenant in this lease indicates that the tenant is to make good every injury to these saloon premises except those resulting from the different causes mentioned. The situation here is peculiar, and upon all the facts found I think the case may well rest upon the breach of that covenant.

It is not necessary, therefore, to further consider whether the defendant under this lease is liable upon an implied covenant not to use the premises for an illegal or extra hazardous purpose. The loss of 11 months' rental has followed the illegal use of·the premises as a direct consequence thereof, and the same should be·borne by the party who has by misuse disqualified the premises for rental. I favor a reversal of the judgment and a new trial, with costs to the appellant to abide the event.