■ CLAUDE C. CHARLEBOIS et al., Appellants, v CARISBROOK INDUSTRIES, INC., et al., Respondents. [803 NYS2d 795]—

Peters, J. Appeal from an order of the Supreme Court (Aulisi, J.), entered December 16, 2004 in Warren County, which granted defendants' motion for partial summary judgment dismissing the complaint.

Plaintiffs own a commercial warehouse in the City of Glens Falls, Warren County. They entered into a five-year lease with defendants, commencing April 1, 1997, which included clauses requiring defendants to maintain and clean the premises and engage in a preventive maintenance program for the "heating, plumbing, electrical and alarm systems." In January 2002,

plaintiffs were timely notified that defendants intended to vacate the premises at the conclusion of the lease term on March 31, 2002. At the time of such notification, plaintiffs were out of state and did not plan on returning until May 2002. When plaintiffs did not receive a rent payment for March, plaintiff Claude C. Charlebois's inquiry revealed that payment would not be tendered until a final walk-through of the premises could be completed; it is undisputed that the walk-through did not occur until May when plaintiffs returned to New York.

At the time of the walk-through, plaintiffs noted that, although defendants had vacated the building, the premises suffered from substantial damage which included many of the systems which were covered by the preventive maintenance program. At plaintiffs' request, defendants agreed to fully repair the premises. By September 2002, the repairs were completed, the final rent payment was tendered and defendants returned their set of keys.[1] From the time that the leasehold terminated, plaintiffs maintained all relevant and necessary insurance on the premises, paid its taxes and maintenance costs, and transferred all utilities into their own name. Moreover, by April 29, 2002, plaintiffs listed the property with a realtor for its sale or lease and later listed it on an Internet Web site; never was there a claim that defendants' lack of repairs caused a loss of a potential lease or sale agreement.

In December 2003, plaintiffs commenced this action averring, among other things, that defendants owed plaintiffs rental arrearages for the period between April 2002 and October 2002 due to their status as holdover tenants. Defendants successfully moved for partial summary judgment and this appeal ensued.

Plaintiffs' claim of a holdover tenancy premised upon defendants' retention of a set of keys and their periodic use of the premises to complete repairs is insufficient. Typically, "a tenant who has vacated [the] premises but breached covenants to repair cannot be held liable for holdover rent while the repairs are made and the premises unleased" (*Arnot Realty Corp. v New York Tel. Co.*, 245 AD2d 780, 782 [1997]; *see Chemical Bank v Stahl*, 255 AD2d 126, 127 [1998]; *Orkin's Fashion Stores v Kress & Co.*, 68 NYS2d 764, 764 [1947]; *Canfield v Harris & Co.*, 222 App Div 326, 326 [1927], *affd* 248 NY 541 [1928]; *Mudge v West End Brewing Co.*, 145 App Div 28, 31 [1911], *affd* 207 NY 696 [1913]; *see also City of New York v Pennsylvania R.R. Co.*, 37 NY2d 298, 301 [1975]; *Tobin v Union News Co.*, 13 NY2d 1155, 1157 [1964]; *cf. Palumbo v Donalds*,

---

1. The adequacy of said repairs are not the subject of this litigation and it is undisputed that plaintiffs always retained their own set of keys.

194 Misc 2d 675 [2003]). While we acknowledge that there are circumstances where a tenant may be found to be a holdover tenant after the cessation of the lease term due to its continued use of the premises or a failure to remove all of its property thereon (*see Niagara Frontier Transp. Auth. v Euro-United Corp.*, 303 AD2d 920, 922-923 [2003], *amended* 306 AD2d 952 [2003]; *Lordae Realty Corp. v Montefiore Med. Ctr.*, 232 AD2d 338, 338 [1996]), no such facts have been proffered here. Charlebois confirmed, in his deposition testimony, that the premises was completely vacated at the time of the initial walk-through and plaintiffs fully understood, at such time, that defendants intermittently frequented the premises to make the requested repairs.[2] Moreover, throughout the claimed holdover period, plaintiffs made efforts to lease or sell the premises, transferred all of the services and taxes to themselves, and accepted, without objection, a tender of the final rental payment. Hence, as defendants made a prima facie showing of entitlement to judgment as a matter of law (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]), plaintiffs failure to raise a triable issue of fact supported Supreme Court's award for partial summary judgment.

Mercure, J.P., Spain, Mugglin and Rose, JJ., concur. Ordered that the order is affirmed, with costs.

---

2. We note that the lease agreement does not provide for consequential damages due to a breach of a covenant to repair.